IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | |
| ) | CA. No. 3:09-00822-CMC |
| John G. Calhoun, ) | |
| Glenda R. Calhoun, ) | |
| ) | Appeal from |
| Appellants-Debtors, ) | Bankruptcy Case No. 08-01151-DD |
| ) | |
| v. ) | |
| ) | |
| W. Clarkson McDow, Jr., ) | |
| United States Trustee ) | |
| ) | |
| Appellee. ) | |
| _____) | |

This matter is before the court on appeal by appellants-debtors John G. Calhoun and Glenda R. Calhoun ("Debtors") from the bankruptcy court's dismissal of their Chapter 7 bankruptcy case. Upon motion of the United States Trustee ("Trustee"), the bankruptcy court dismissed Debtors' case under 11 U.S.C. § 707(b)(3)(B), which allows dismissal of a Chapter 7 petition when the totality of the circumstances of a debtor's financial situation demonstrates abuse. For the reasons set forth below, this court affirms the decision of the bankruptcy court.

**PROCEDURAL HISTORY**

The bankruptcy court entered an order dated November 10, 2008, dismissing Debtors' Chapter 7 petition, while providing Debtors the option to file a motion to convert their case to a Chapter 13 proceeding. On January 15, 2009, the court denied Debtors' motion to alter or amend judgment and to grant a new trial and Debtors' motion for reconsideration. On January 26, 2009, Debtors filed a timely notice of appeal in this court. This court has appellate jurisdiction under 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of bankruptcy judges.

**STANDARD OF REVIEW**

On review of a bankruptcy court's order, the district court functions as an appellate court and may affirm, reverse, modify or remand with instructions for further proceedings. Fed. R. Bankr. P. 8013. The district court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *See In re Merry-Go-Round Enterprises, Inc.*, 400 F.3d 219, 244 (4th Cir. 2005). Rule 8013 also provides that "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. A trial court's findings of fact are clearly erroneous "when, although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Green*, 934 F.2d 568, 570 (4th Cir. 1991). The United States Supreme Court has held "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

**BACKGROUND**

On February 27, 2008, Mr. and Mrs. Calhoun ("Debtors") filed a voluntary Chapter 7 bankruptcy petition, seeking to discharge $106,707 in unsecured debt. Debtors are retired. Mr. Calhoun receives monthly retirement income totaling $7,313, or $87,756 annually. Mr. Calhoun also receives a monthly Social Security benefit of $1,459. Mrs. Calhoun does not work and does not receive any income. According to Schedules I and J, Debtors allege that their monthly income is $8,772 and their monthly expenses are $8,639.[1] Based on Debtors' figures, they have a monthly

---

[1] Debtors include Social Security income in the amount of $1,459 on Schedule I as "Social security or government assistance" (line 11) and it is thus included in the "Average Monthly Income" (line 15). However, on Schedule J, Debtors include $1,459 as an "adjustment to exclude Social Security income" as "Other" expenses (line 17). The net result is that Social Security income is not included in Debtors' monthly net income calculation. The Trustee takes the position that

net income of $133.

Debtors' annualized household gross income, including Social Security benefits, is $105,264. The applicable median income for a household of two in South Carolina is $46,521. Because Debtors' annualized monthly income exceeds the applicable median income,[2] Debtors completed all sections of Form B22A (the "means test"). Debtors' monthly deductions allowed under § 707(b)(2) total $7,330.19. A presumption of abuse does not arise under § 707(b)(2) based on the means test.[3]

Debtors live in a 3,300 square foot home, on three and a half acres of land, in Jackson, South Carolina. Their home is located in Aiken County, South Carolina. Debtors currently owe $206,800 and $92,000 on their mortgages, and have monthly mortgage payments totaling $2,151. Debtors attempted to sell their home in 2000, but were unsuccessful after having the house on the market for two years.

Prior to filing for Chapter 7 bankruptcy, Debtors entered into a debt management plan and made efforts to reduce their expenses, resulting in a reduction of $1,893 per month. Additionally, Debtors made payments to ClearPoint Credit Counseling Services and other creditors totaling $2,638

---

Debtors' monthly disposable income is $1,592. The bankruptcy court included a similar statement in its findings of fact. Dkt. No. 4-16 at 3, ¶ 8 ("With the Social Security benefit Debtors have $1,592.00 in monthly net income, using Debtors expense projections.").

[2] It is clear that Debtors' annualized household gross income excluding Social Security income ($87,756) exceeds the applicable median income ($46,521).

[3] The means test is explained in Section 707(b)(2)(A)(I), which provides:
In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of -- (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater, or (II) $10,950.

per month from April 2006 to February 2008. During that time, Debtors did not fall behind on their household expenses but did not have money for emergencies, major repairs, or contingencies.

The parties stipulate that Debtors' debts are primarily consumer debts. Further, evidence at the bankruptcy trial indicated that Debtors' unsecured debts stem primarily from the use of credit cards.

In evaluating the Trustee's motion to dismiss under § 707(b)(3)(B), the bankruptcy court first considered Debtors' ability to pay creditors. Dkt. No. 4-16 at 8-9. The court found that Debtors admitted to monthly disposable income of $133, and the court then considered the additional Social Security income that was not included in that amount. *Id.* The court also considered Debtors' history of paying $2,638 a month for 22 months prior to filing for Chapter 7 relief as an indication of Debtors' ability to pay creditors. *Id.* at 9.

Next, the court considered the factors outlined in *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991):

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

Dkt. No. 4-16 at 10. The court found that Debtors' petition was not filed because of sudden illness, calamity, disability, or unemployment. *Id.* The court found that although there was no indication of cash advances, Debtors incurred a substantial amount of debt, notably $130,000 for home

renovations in 2003 and $107,000 in unsecured nonpriority debt. *Id.* Next, the court found that Debtors' proposed family budget was excessive and could be reduced if Debtors reduced "extravagant" expenses, such as food ($930 per month), cable ($111 per month), laundry and dry cleaning ($80), and life insurance policies ($439 per month). *Id.* The court also indicated that Debtors' expenses were overstated because Debtors were able to pay $2,638 a month for 22 months prior to filing for bankruptcy without falling behind on other expenses. Dkt. No. 4-16 at 11. Based on the totality of the circumstances of Debtor's financial situation, after considering Debtors' ability to pay and the *Green* factors, the court concluded that Debtors have an ability to pay a substantial portion of their debt. *Id.* at 12. Accordingly, the court dismissed Debtors' case under Chapter 7 pursuant to § 707(b)(3)(B), with the option of converting their case to Chapter 13. *Id.*

Debtors filed a timely appeal of the bankruptcy court's dismissal. On appeal, Debtors argue that the bankruptcy court erred by using an incorrect standard for determining abuse. Specifically, Debtors raise five issues on appeal:

(1) Whether the means test replaces the ability to pay analysis;

(2) Whether the ability to pay, standing alone, is sufficient to require dismissal of a Chapter 7 case for substantial abuse;

(3) Whether Social Security income is to be included when determining disposable income and ability to pay;

(4) Whether the debtors have the ability to pay unsecured creditors; and

(5) Whether the totality of the circumstances requires dismissal of this Chapter 7 case.

## DISCUSSION

Many of the issues presented by Debtors involve statutory interpretation, particularly of

amendments to the Bankruptcy Code enacted in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), S. 256, Pub. L. No. 109-8, 119 Stat. 23. BAPCPA, as it relates to this case, reflects Congress's attempts to control abuse of Chapter 7.

**Means Test.** Debtors first argue that Congress intended the means test to replace the ability to pay analysis when it enacted BAPCPA. Prior to BAPCPA, bankruptcy courts considered a debtor's ability to pay creditors when evaluating whether a debtor's petition for Chapter 7 relief was "substantial abuse." BAPCPA introduced the "means test," which authorizes courts to dismiss Chapter 7 cases when a mathematical formula yields monthly disposable income that exceeds a statutory threshold. Debtors contend that the inclusion of the formula indicates Congress's intent to replace the ability to pay analysis with the formulaic analysis as announced in the means test. However, the means test is merely one tool for analyzing whether the court should dismiss a case for abuse.

Section 707(b)(1) permits dismissal of a Chapter 7 case filed by an individual debtor with primarily consumer debts if granting the debtor relief would be an abuse of the provisions of Chapter 7. Section 707 provides two independent bases for determining whether granting relief under Chapter 7 would be an abuse of the Bankruptcy Code. The first basis involves debtors who have above median income, § 707(b)(2)(A). If a debtor has above median income, the court conducts the means test to determine whether a presumption of abuse arises. If the presumption arises, the debtor may then rebut the presumption by a showing of special circumstances and thereby avoid dismissal. If the presumption is not triggered by the means test, the court may then consider the other basis of abuse found in § 707(b)(3).

Section 707(b)(3)[4] allows the court to consider (1) whether the petition was filed in bad faith or (2) whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." This second basis for dismissal is a separate inquiry from the § 707(b)(2)(A) means test inquiry.

While Debtors are well above the median income, their expenses are such that no presumption of abuse arises under § 707(b)(2). Debtors do not argue that the means test was conducted improperly. Rather, Debtors contend that the means test is applicable to both bases for dismissal and that their case should not have been dismissed because they passed the means test. Debtors argue that BAPCPA replaced the former ability to pay analysis with the statutory means test and that ability to pay should not be considered by courts when considering dismissal for abuse under § 707(b)(3). Relying on *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2006), Debtors assert that "[t]o perform the means test and then perform another means test that is more to the U.S. Trustee's liking ignores the plain language of the statute and would be a waste of judicial resources." *Id.* at 506.

Most courts that have considered the relationship of the means test contained in § 707(b)(2) and the basis for dismissal under § 707(b)(3) have found that the two inquiries are separate and

---

[4] Section 707(b)(3) provides:
In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(l) of such paragraph does not arise or is rebutted, the court shall consider-

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

distinct. Courts, therefore, find that ability to pay is still the primary factor in determining whether the totality of the circumstances demonstrate abuse. "The Debtors' interpretation of Section 707(b), which excludes consideration of their ability to pay from the 'totality of the circumstances . . . of the debtor's financial situation' test, does not comport with the plain meaning of the statute." *In re Crink*, 2009 Bankr. LEXIS 707, *11-12 (Bankr. M.D.N.C. 2009) (citing 13 cases). Consideration of a debtor's financial situation must include an assessment of debtor's income and expenses, and the resulting ability to pay. *Id.* "To look at all the factors that make up a debtor's financial situation except for her ability to pay would be to look at something less than the *totality* of the debtor's circumstances, which is not what Section 707(b)(3)(B) requires." *Id.* at *12. The means test is an initial filter for disqualifying some debtors from Chapter 7 because they have an ability to pay. *Id.* at *14. However, the means test is not the exclusive method for disqualification and to hold otherwise would be contrary to the plain language of the statute. *Id.* Even in *Nockerts*, the case on which Debtors rely, the court stated that it "is not suggesting that the debtor's ability to pay should not be considered as a factor in the 'totality of the circumstances' test, or that passing the means test ends the inquiry." *Nockerts*, 357 B.R. at 507. The court, therefore, rejects Debtors' argument that ability to pay is no longer to be considered under § 707(b)(3).

*Green* **Factors.** In its order dismissing Debtors' case, the bankruptcy court said, "This Court now holds that, while the totality of the debtor's financial circumstances must be examined, the ability to pay a significant dividend to creditors and the failure to do so standing alone can be an abuse of chapter 7, absent mitigating factors." Dkt. No. 4-16 at 9. Relying on *In re Green*, 934 F.2d 568 (4th Cir. 1991), Debtors argue that even if ability to pay is a consideration under § 707(b)(3), it cannot be the sole basis of dismissal for abuse.

8

In *Green*, a pre-BAPCPA case, the Fourth Circuit outlined the factors that must be considered when deciding whether to dismiss a case under Chapter 7 for "substantial abuse." *Id.* The Fourth Circuit rejected an argument articulated in *Zolg v. Kelly*, 841 F.2d 908 (9th Cir. 1988), that ability to pay alone justifies dismissal of a Chapter 7 case for substantial abuse. *Green*, 934 F.2d at 573. Instead, the court adopted a totality of the circumstances approach, which required courts to consider a debtor's ability to pay and at least five other factors when evaluating substantial abuse. *See supra* p. 4 (listing the *Green* factors). The court reasoned that § 707(b)'s presumption in favor of granting debtor's relief suggested that other factors, not just ability to pay, must be considered.

Debtors argue that the *Green* factors were codified by BAPCPA in § 707(b)(3)(B)'s "totality of the circumstances . . . of the debtor's financial situation." *See Nockerts*, 357 B.R. at 505. The Trustee argues that BAPCPA supercedes *Green* and there is nothing to indicate that the *Green* factors were codified into § 707(b)(3)(B). In fact, the Trustee argues that the *Green* factors are not consistent with the new § 707(b)(3)(B). As a result of BAPCPA, in addition to immediate disqualification for failing the means test, there are two separate grounds for dismissal for abuse: (1) bad faith under § 707(b)(3)(A) and (2) the totality of the circumstances of the debtor's financial situation under § 707(b)(3)(B). The division of prior § 707(b) into two grounds for dismissal allows courts to consider either the debtor's bad faith *or* the totality of the debtor's financial situation. Because *Green* analyzed a debtor's bad faith and financial circumstances, the Trustee argues that *Green* is no longer applicable to the divided § 707(b).

9

The Fourth Circuit has not addressed the viability of the *Green* factors after BAPCPA.[5] Certainly, § 707(b) has been amended in three important ways: (1) the standard for dismissal has been lowered from "substantial abuse" to "abuse"; (2) the presumption in favor of granting debtor's relief has been removed; and (3) the grounds for dismissal have been divided into bad faith and the totality of the circumstances of debtor's financial situation. These amendments likely undercut the holding of *Green*.

The *Green* factors essentially allow the court to consider: (1) whether there was something outside of debtor's circumstances that caused debtor to seek bankruptcy; (2) whether debtor was making excessive consumer purchases; (3) whether debtor's proposed budget is unreasonable; (4) whether debtor's reported financial statements are reasonable and accurate; and (5) whether debtor filed a bankruptcy petition in good faith. *Green*, 934 F.3d at 572. These factors are certainly helpful in considering a debtor's financial situation and a court would not err in considering them under § 707(b)(3)(B). However, as the court stated in *Green*, "the debtor's ability to repay is the *primary* factor to be considered." *Id.* It is perfectly reasonable for a bankruptcy court to analyze a debtor's ability to pay and then determine whether any of the *Green* factors suggest abuse. Certainly, a lesser showing of abuse is required under § 707(b)(3)(B) than prior § 707(b) because of the decreased standard and the deletion of the presumption of awarding debtor relief.

The court finds that the "totality of the circumstances . . . of the debtor's financial situation"

---

[5] Bankruptcy courts disagree as to the applicability of the *Green* factors to § 707(b)(3)(B). *Compare In re Henebury*, 361 B.R. 595, 607 (Bankr. S.D. Fla. 2007) ("[T]he Court does not find that *Green* provides guidance post-BAPCPA for analyzing the totality of the circumstances of debtor's financial situation under § 707(b)(3)."), *with Crink*, 2009 Bankr. LEXIS 707 at *19 ("In the Fourth Circuit, a review of the *Green* factors is necessary to a determination of abuse under Section 707(b)(3)(B).").

includes consideration of extraordinary events that may have led to debtor's bankruptcy petition, the history of consumer purchases, debtor's proposed budget, and the financial schedules and statements provided by debtor. Anything less would not be the "totality of the circumstances" which, depending on the case, may include consideration of some or all of the *Green* factors, and potentially other factors.

The bankruptcy court did not dismiss Debtors' case based solely on an ability to pay. Rather, the court weighed the *Green* factors and found that they weighed in favor of dismissing for abuse. The bankruptcy court found an ability to pay based on reported disposable income as well as overstated and extravagant expenses, and excessive consumer purchases. The court properly considered the *Green* factors and found that the first four factors weighed in favor of dismissal. Specifically, the court found that:

> (1) Debtors' petition was not the result of sudden illness, calamity, disability, or unemployment;
>
> (2) Although Debtors did not incur cash advances, Debtors incurred substantial debt, including $130,000 in home renovations and $107,000 in unsecured nonpriority debt;
>
> (3) Debtors' proposed family budget is excessive and expenses could be reduced by eliminating a second life insurance policy, cable and internet, and reducing dry cleaning and transportation expenses in light of their retirement status; and
>
> (4) The credibility of Debtors' financial statements is undermined by their previous monthly payments of $2,638 for 22 months preceding their bankruptcy petition.

Dkt. No. 4-16 at 10-11. Accordingly, the court did not dismiss solely on Debtors' ability to pay.

**Social Security Income.** Debtors argue that the bankruptcy court erred in considering Social Security income in Debtors' ability to pay, based on § 101(10A) which defines "current monthly income" to specifically exclude any "benefits received under the Social Security Act." Based on this definition, Debtors argue that the court cannot consider Social Security income when

determining the totality of the circumstances under § 707(b)(3)(B). The Trustee argues that Social Security income may be considered under § 707(b)(3)(B) because Congress did not exclude that income from consideration as it did in other sections of the Bankruptcy Code. Based on the plain language of the statute, the Trustee argues that the "totality of the circumstances" includes consideration of all income, including Social Security income. Neither party directs the court to, and the court has not discovered, any case law addressing the precise issue of whether Social Security income may be included in a totality of the circumstances analysis under § 707(b)(3)(B).[6] The court, therefore, turns to the statute itself for guidance.

Congress expressly excluded benefits received under the Social Security Act from "current monthly income" when computing the means test under § 707(b)(2) and when calculating disposable income for above-median Chapter 13 debtors under § 1325. The enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all items not specifically excluded. *Blausey v. United States Trustee*, 552 F.3d 1124, 1133 (9th Cir. 2009). Had Congress intended to exclude Social Security income from consideration as part of the "totality of the circumstances" in § 707(b)(3)(B), it could have done so as it did in other parts of the Bankruptcy Code.

Further, the plain language of § 707(b)(3)(B), the "totality of the circumstances of the debtor's financial situation," does not preclude consideration of all of Debtors' income. That language is not ambiguous and the court need not look beyond the statutory text to determine what

---

[6] The Trustee cites *In re Booker*, 399 B.R. 662 (Bankr. W.D. Mo. 2009) as support for the argument that Social Security income should be included in considering the totality of the circumstances. However, the only case cited by the *Booker* court was the bankruptcy court's decision in this case.

income a bankruptcy court may consider. The court holds that the totality of the circumstances of Debtors' financial situation includes consideration of all of Debtors' income, including Social Security income. The bankruptcy court, therefore, did not err when it considered Debtors' Social Security income in the amount of $1459 per month as part of the totality of the circumstances of Debtors' financial situation under § 707(b)(3)(B).

Alternatively, the court finds that dismissal of Debtors' case under § 707(b)(3)(B) would have been proper without consideration of Debtors' Social Security income. Although the bankruptcy court considered Debtors' Social Security income as part of their ability to pay, the court did not dismiss solely on a finding of an ability to pay. While ability to pay is the primary factor to be considered, it is not the only factor to be considered when deciding whether granting Chapter 7 relief would be an abuse.[7] Further, exclusion of Debtors' Social Security income from the analysis simply *decreases* the ability to pay, but does not *eliminate* the ability to pay.

In Debtors' case, the bankruptcy court found an ability to pay, based on reported monthly disposable income of at least $133 (excluding Social Security income). Perhaps more importantly,

---

[7]As another court noted:
> To begin with, the overall test, as set forth [in] § 707(b)(3)(B), is not whether a debtor has an ability to pay, but whether, based on the totality of the circumstances, a debtor has a need for bankruptcy relief. The ability of a debtor to pay, therefore, is just one facet of this larger test. In this way, it was set forth in *In re Krohn*: 'Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, . . . and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.' 886 F.2d at 127.

*In re Stewart*, 383 B.R. 429, 433 (Bankr. N.D. Ohio 2008) (some internal quotations omitted).

Further, courts have held that although there is more likely to be a finding of abuse where the ability to pay is great, the converse is not necessarily true. *In re Christiansen*, 2009 Bankr. LEXIS 81, *9 (M.D.N.C. 2009) (citing *In re Praleikas*, 248 B.R. 140, 145 (Bankr. W.D. Mo. 2000)).

the bankruptcy court found that Debtors have excessive expenses, which if reduced, would increase Debtors' monthly disposable income and indicate an even greater ability to pay.

The bankruptcy court did not, therefore, err in determining that the totality of the circumstances demonstrates abuse, as evidenced by an ability to pay and bolstered by other *Green* factors. The court's judgment is affirmed regardless of the bankruptcy court's consideration of Social Security income.

**Ability to Pay.** Debtors argue that the bankruptcy court erred in determining that they have an ability to pay creditors. Debtors allege that they have attempted to reduce their expenses in order to successfully complete a debt management plan to repay their creditors, but that their proposed "debt management plan left no funds for health emergencies and no allowance for unexpected expenses." Dkt. No. 13 at 8 (Appellants' Brief).

The bankruptcy court found that Debtors have sufficient income to make a substantial payment to their creditors, which supports its finding of an ability to pay. First, Debtors' budget, as reflected on Schedule J, reflects that they have monthly disposable income of $133, without including the $1,459 in Social Security income Debtors receive monthly. Further, the court found that Debtors' payment of $2,638 per month for 22 months prior to filing their Chapter 7 petition establishes that Debtors have an ability to pay. Since making those payments, Debtors have not experienced a reduction in income or a significant increase in expenses.

The bankruptcy court found that Debtors have excessive expenses, which further supports its finding of an ability to pay. Although Debtors may have reduced expenses prior to filing a petition for Chapter 7, the bankruptcy court found that Debtors' remaining expenses were excessive and "border on the extravagant." Dkt. No. 4-16 at 10. For example, Debtors' monthly expenses

include the following: $930 for food, $360 for transportation, $439 for two life insurance policies, and $111 for cable. See Dkt. No. 4-16 at 3 (Schedule J). After considering Debtors' circumstances, the court found that these particular expenses were excessive.[8]

The court finds that the bankruptcy court did not err in determining that Debtors have an ability to repay their creditors after carefully considering Debtors' income and expenses.

**Totality of the Circumstances.** Debtors argue that the bankruptcy court erred in dismissing their Chapter 7 case because the totality of the circumstances do not demonstrate abuse. To determine whether the totality of the circumstances of Debtors' financial situation demonstrates abuse, the court considered Debtors' ability to pay and the applicable *Green* factors. This court reviews the bankruptcy court's evaluation of these factors for clear error.

As discussed above, the bankruptcy court did not err in concluding that Debtors have an ability to pay. Similarly, the bankruptcy court did not err in its weighing of the *Green* factors. The bankruptcy court found that there was "no sudden precipitating cause for filing bankruptcy," that Debtors incurred "consumer debt far in excess of the ability to repay," Debtors prepared "an excessive budget," and that Debtors "overstat[ed] expenses." Dkt. No. 4-16 at 12. In light of these facts, and the finding of an ability to pay, the bankruptcy court found that Debtors' case should be

---

[8] For example, the court found that the two life insurance policies on Mr. Calhoun's life were excessive:
> Testimony presented at trial demonstrates that debtors spend $439.00 per month on two term life insurance policies. When examined by the UST on the necessity of both policies, Mr. Calhoun explained that one policy was maintained to pay off the mortgages and the other policy would provide for Mrs. Calhoun after his death. However, Mr. Calhoun's income from retirement accounts will continue to provide Mrs. Calhoun with 75% of the monthly income after his death, obviating the need for the second life insurance policy.

Dkt. No. 4-16 at 11.

dismissed for abuse under § 707(b)(3)(B). Nothing presented by Debtors suggests that the bankruptcy court clearly erred in its consideration of the *Green* factors as part of the totality of the circumstances.

## CONCLUSION

The court finds that the bankruptcy court committed no reversible error in dismissing Debtors' case. Accordingly, the court affirms the bankruptcy court's decision to dismiss Debtors' Chapter 7 case with the opportunity to convert their case to Chapter 13.

**IT IS SO ORDERED.**

      s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
May 26, 2009

16